**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **STACY GRAHAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 22-4004-KHV** |
| **FLORENCE CORPORATION OF** | ) | |
| **KANSAS d/b/a FLORENCE** | ) | |
| **CORPORATION** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

On January 19, 2022, Stacy Graham filed suit against Florence Corporation of Kansas d/b/a

Florence Corporation alleging that it discriminated against her based on sex/gender, maintained a

hostile work environment, subjected plaintiff to quid pro quo discrimination and retaliated against

her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et

seq.  Plaintiff also alleges that defendant failed to accommodate her disability under the Americans

with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and that defendant negligently

supervised and negligently retained her supervisor.  This matter is before the Court on Defendant's

Partial Motion To Dismiss For Failure To State A Claim (Doc. #7) filed February 28, 2022.  For

reasons stated below, the Court sustains defendant's motion.

**Legal Standard**

In ruling on defendant's motions to dismiss for failure to state a claim under Rule 12(b)(6),

Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines

whether they plausibly give rise to an entitlement for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 679

(2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state

a claim which is plausible—and not merely conceivable—on its face.  Id. at 679–80; Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 555 (2007).   In determining whether a complaint states a

plausible claim for relief, the Court draws on its judicial experience and common sense.  Iqbal,

556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions.

See id.; United States v. Herring, 935 F.3d 1102, 1110 (10th Cir. 2019).  Plaintiff bears the burden

of framing her claim with enough factual matter to suggest that she is entitled to relief; it is not

enough to make threadbare recitals of a cause of action accompanied by conclusory statements.

See Twombly, 550 U.S. at 556.  Plaintiff makes a facially plausible claim by pleading factual

content from which the Court can reasonably infer that defendant is liable for the alleged

misconduct.   Iqbal, 556 U.S. at 678.   Plaintiff must show more than a sheer possibility that

defendant has acted unlawfully—it is not enough to plead facts that are "merely consistent" with

defendant's liability.  Id. (quoting Twombly, 550 U.S. at 557).  A pleading which offers labels and

conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid

of further factual enhancement will not stand.  Id.  Similarly, where the well-pleaded facts do not

permit the Court to infer more than mere possibility of misconduct, the pleading has alleged—but

has not "shown"—that the pleader is entitled to relief.  Id. at 679.   The degree of specificity

necessary to establish plausibility and fair notice depends on context, because what constitutes fair

notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case.  Robbins v. Oklahoma, 519

F.3d 1242, 1248 (10th Cir. 2008).

**Factual Background**

Plaintiff alleges as follows:

Plaintiff is a female.  In July of 2019, she began working for defendant through a staffing agency.  In October of 2019, Jeff Stewart, plaintiff's supervisor, received a promotion to the position of Production Manager for defendant.  In November of 2019, defendant hired plaintiff to work full-time in the Assembly Department.  In or around November of 2019, Stewart began sexually harassing and expressing interest in plaintiff.  Specifically, Stewart would tell plaintiff that she was beautiful and would comment on her looks.  Whenever plaintiff walked by him, Stewart would stare at her in a sexual manner.

At the time plaintiff started the position, Stewart witnessed her crying as she was experiencing a difficult personal situation.  In November or December of 2019, Stewart told plaintiff that he wanted to help her and gave her his phone number.  Every day, Stewart would ask plaintiff if she needed anything and if she was okay.  He gave her money on several occasions.  In December of 2019, Stewart promoted plaintiff to the position of "Springs and Arms" and told her that he would put her at the "Adjuster's" pay rate once plaintiff completed her certification. Plaintiff started working and training in the new position.  In February of 2020, plaintiff officially started her new position and in March of 2020, plaintiff completed the certification.

In March of 2020, after Stewart had groomed plaintiff and abused his power for months, Stewart and plaintiff started a sexual relationship.  While plaintiff initially rebuffed Stewart's advances, Stewart and plaintiff engaged in sexual intercourse on three occasions in March, April and June of 2020.  On or about June 8, 2020, they had their last sexual encounter.  Stewart told plaintiff that he was "serious" about her and asked to go to her apartment to see her in the mornings. He also told plaintiff that he was going to get in touch with human resources to make sure plaintiff received the Adjuster's pay rate.

-3-

From June 9, 2020 until January 11, 2021, plaintiff took a leave of absence due to her health condition and disability of congestive heart failure and the risk that she might contract COVID-19 while at work.  Plaintiff was on short-term disability during this time.  When plaintiff returned to work, defendant placed her in the position of "Springs and Arms."

Around January 15, 2021, Stewart approached plaintiff while she was working and asked her if she had a "new fan," as he believed a male employee had flirted with plaintiff.  Plaintiff responded that she did not have any new fans and that she did not want any new fans.  Stewart responded and said, "Aw beautiful, no new fans?"  Plaintiff repeated that she did not want any new fans, and Stewart said, "Aw beautiful, not even me?"  Plaintiff replied and said, "No new fans" and continued to work.  Stewart walked away.

Around January 18, 2021, Stewart demoted plaintiff.  He gave her a significant change in employment status and an undesirable reassignment.  He changed plaintiff's position from "Springs and Arms" to "Parcel Doors."  A younger female took plaintiff's previous position of "Springs and Arms."  Plaintiff complained to her lead and reminded her that plaintiff had returned from a medical leave of absence due to her disability/medical condition and that plaintiff should be returned to the "Springs and Arms" position which she had occupied when she went on medical/disability leave.

Further, when plaintiff returned to work, she had medical documentation requesting reasonable accommodations in the form of an N95 mask and an individual work station. Defendant did not provide either of the requested accommodations.  Defendant also did not engage in the interactive process with plaintiff to discuss possible accommodations relating to her disability. Between January and March of 2021, Stewart repeatedly promised plaintiff that he would talk to Human Resources about an increase in pay following her certification for the "Springs and Arms"

position, but defendant never provided a pay increase.  Defendant did not return plaintiff to her previous position.

Near the end of February of 2021, one of the leads informed plaintiff that eight employees would move from the second shift back to the first shirt, and that all eight employees would be placed in their original positions.  Plaintiff's lead informed plaintiff that she wanted plaintiff to return to the "Springs and Arms" position.  On March 2, 2021, at the morning start-up meeting, defendant distributed the assignments.  Defendant returned every employee to his or her original position except for plaintiff.  Defendant assigned plaintiff to the "Key Table," which was another demotion, a significant change in employment status and an undesirable reassignment.  The employees in the meeting commented to plaintiff that with this demotion, she had been "screwed over."  Stewart was the decision maker behind plaintiff's new position.  After Stewart demoted plaintiff, she went to Human Resources and asked for a copy of the employee handbook.  Human Resources told her that they could not give her the entire handbook but could give her the specific policy she needed.

Stewart abused his power over subordinate female employees by offering promotions, pay increases and financial incentives in exchange for sexual relationships.  Stewart has been sexually involved with another female employee and he has paid for her vacation.  Stewart has naked pictures of one of the female employees and has shown the photos to other employees.  Prior to plaintiff's interactions with Stewart, defendant received complaints about Stewart and disciplined him with respect to his inappropriate interactions with other female employees.

On January 19, 2022, plaintiff filed suit against Florence Corporation of Kansas d/b/a Florence Corporation.  Plaintiff alleges the following claims: (1) sex discrimination, (2) hostile

work environment, (3) quid pro quo sex discrimination, (4) retaliation, (5) failure to accommodate, (6) negligent supervision and (7) negligent retention.

## **Analysis**

Defendant argues that the Court must dismiss plaintiff's negligent supervision and negligent retention claims because Kansas does not recognize negligence claims where a plaintiff is suing her employer for harassment by another employee.  Plaintiff disagrees and argues that federal law does not provide an adequate remedy.

Negligent supervision requires that an employer fail to supervise an employee while having "reason to believe that the employment of the employee would result in an undue risk of harm to others." Wayman v. Accor N. Am. Inc., 45 Kan. App. 2d 526, 541 (2011).  An employer may also be responsible for injury that could have been prevented with better training of an employee. Estate of Belden v. Brown Cty., 46 Kan. App. 2d 247, 283 (2011).

Negligent retention is the breach of the duty to hire and retain only safe and competent employees. Plains Res., Inc. v. Gable, 235 Kan. 580, 590 (1984).  To establish negligent retention, plaintiff must show that the employer had reason to believe that the employee's dangerous "quality or propensity" created an undue risk to others and kept the employee on anyway. Schmidt v. HTG, Inc., 265 Kan. 372, Syl. ¶ 10 (1998).  The harm sued for must have been within such risk.  Id.

Defendant argues that plaintiff cannot bring negligent supervision and negligent retention claims because Kansas law does not recognize these claims in the employment context.  Plaintiff was an employee when Stewart allegedly engaged in the inappropriate conduct, and recovery under theories of negligent supervision and negligent retention is generally reserved for third parties. Greer v. Sw. Bell Tel. Co., No. 18-1312-EFM, 2019 WL 2646662, at *3 (D. Kan. June 27, 2019) ("An employee who has been injured by a coworker cannot recover against her employer

for negligent retention, supervision or training; recovery is generally limited to third parties."). In response, plaintiff cites cases where negligent supervision and retention claims survived in non-employment contexts.[1] Further, an employer is only responsible for an employee's authorized acts committed within the scope of the employee's duties, and an employee's duties do not include the way he treats other employees. Beam v. Concord Hosp., Inc., 920 F. Supp. 1165, 1168 (D. Kan. 1996); Bedenfield v. United Parcel Service, Inc., No. 19-2658-SAC, 2020 WL 707797, at *2 (D. Kan. Feb. 12, 2020) ("[H]arassment by a coworker will not constitute an actionable injury for the purposes of negligent supervision or training."); Dean v. Boeing Co., No. 02-1019-WEB, 2002 WL 1299772, at *6 (D. Kan. June 4, 2002) ("The common law duty of an employer to provide a safe workplace has never been held to extend to ensuring that company managers do not discriminate against employees on the basis of sex.").

---

[1]    Plaintiff cites three cases to support the contention that the torts of negligent supervision and negligent retention in the employer/employee context *may* be permitted under Kansas law. She first cites Stovall v. Brykan Legends, LLC, No. 17-cv-2412-JWL, 2019 WL 1670798 (D. Kan. Apr. 17, 2019), where the court denied defendant's motion to dismiss plaintiff's negligent retention and hiring claims. In Stovall, defendant argued that the claims should be dismissed not because negligent retention and hiring claims are impermissible in the employer/employee context, but because the Kansas Workers' Compensation Act provided the exclusive remedy for plaintiff's physical injuries. Id. at *2. Plaintiff also cites Ulrich v. K-Mart Corp., 858 F. Supp. 1087, 1094 (D. Kan. 1994), where the court granted defendant's motion for summary judgment on plaintiff's negligent retention, hiring and training claims because plaintiff did not raise a genuine issue of material fact that defendant knew of the individual's propensity to sexually harass other employees. Finally, plaintiff cites Bernhard v. Doskocil Cos., 861 F. Supp. 1006, 1012 (D. Kan. 1994), where the court granted defendant's motion for summary judgment on plaintiff's negligent retention claim because plaintiff's allegations were insufficient to support the claim.

    The courts in Stovall, Ulrich and Bernhard did not address the argument before this Court, and the courts' dismissal of negligence claims on grounds other than the argument raised before this Court is insufficient to show that the long-standing precedent in this district "has been put to doubt by any recent Kansas decision." Fantroy v. Southwestern Bell Telephone Co., No. 18-1311-JTM, 2019 WL 1556207, at *1 (D. Kan. April 10, 2019).

Plaintiff argues that the Court should not dismiss her negligent supervision and retention claims because Title VII does not provide an adequate remedy.  Specifically, plaintiff argues that Title VII has caps on damages and Kansas does not have a cap on non-economic damages.  Plaintiff relies on Flenker v. Willamette Indus., 967 P.2d 295, 266 Kan. 198 (1998), which addressed the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. § 651 et seq., and analyzed "whether a statutory remedy is adequate and thus precludes the common-law remedy."  Id. at 295.  In determining whether a remedy is adequate, the most significant factor is whether the plaintiff-employee has control over her claims.  Prager v. State Dep't of Rev., 20 P.3d 39, 48–49, 271 Kan. 1, 49 (2001).  In Flenker, the court found that OSHA did not provide an adequate remedy because the employee did not have control over her claim.  Flenker, 967 P.2d at 303.  Her only OSHA remedy consisted of the right to file a complaint with the Secretary of Labor, and OSHA made no provision for her to bring a private action in federal court.  Id.

Unlike under OSHA, where the Secretary of Labor has the sole discretion to bring an action on the employee's behalf, under Title VII, "the aggrieved person is not left without a remedy if the administrative agency does not pursue the complaint; the complainant is given permission to sue."  Prager, 271 Kan. at 49; Flenker, 266 Kan. at 209.  Therefore, plaintiff's remedy is "more effective under Title VII than it is under OSHA" and she has more control over her claim because she can bring a civil suit if the EEOC elects not to file suit on her behalf.  Flenker, 266 Kan. at 209.  Further, "the mere fact that the tort remedies might provide greater compensation than the statutory remedies does not make the statutory remedies . . . inadequate."  Rupp v. Purolator Courier Corp., 790 F. Supp. 1069, 1072 (D. Kan. 1992).

Therefore, the Court dismisses plaintiff's claims for negligent supervision and negligent retention for failure to state a claim.

**IT IS THEREFORE ORDERED** that <u>Defendant's Partial Motion To Dismiss For Failure To State A Claim</u> (Doc. #7) is **SUSTAINED.**

Dated this 28th day of June, 2022 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge
